UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------

In re: Northwest Bay Partners, LTD.                    Chapter 11
                                                       Case No. 19-10615
                               Debtor.
----------------------------------------------------------

APPEARANCES:

Peter A. Pastore, Esq.
*Attorney for Debtor*
O'Connell & Aronowitz P.C.
54 State Street
Albany, NY 12207

Joseph M. Walsh, Esq.
*Attorney for Debtor*
Walsh & Walsh, LLP
42 Long Alley
Saratoga Springs, NY 12866

Jesse P. Schwartz, Esq.
*Attorney for Debtor*
Walsh & Walsh, LLP
42 Long Alley
Saratoga Springs, NY 12866

Stephen J. Waite, Esq.
*Attorney for Bell Point Shores Homeowners Association, Inc.*
Waite & Associates, P.C.
199 New Scotland Avenue
Albany, NY 12208

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

The current matters before the Court are dueling summary judgment motions regarding

the claim of Bell Point Shores Homeowners Association, Inc. ("HOA" or "Creditor"). Debtor

Northwest Bay Partners, LTD. ("NBP" or "Debtor") requests an order disallowing in total or in

part the HOA's filed proof of claim. (Claim No. 2-1). The Creditor has filed a competing

motion requesting dismissal of NBP's statute of limitations ("SOL") affirmative defense.  The

Court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A),

(b)(2)(B) and 1334(b).  For the reasons that follow, the Court grants the Debtor's motion in part

and denies the HOA's motion.

## BACKGROUND

This case began as a somewhat routine Chapter 11 which was filed on April 4, 2019.  The

Debtor owns eleven (11) lots in the eighteen (18) parcel Bell Point Shores subdivision ("Bell

Point") in the Town of Bolton near Lake George, New York.  In the cast of creditors, there are

two main players: the Panella Descendants' Trust ("Panella") that is secured by a mortgage on

seven (7) of the eleven (11) lots and the HOA.  Panella has a judgment of foreclosure and sale

entered January 4, 2019 for $1,618,712.53.[1]  Currently, there is a motion by Panella to lift the

automatic stay.  Preliminarily, Panella and the Debtor have indicated an intent to consensually

resolve their differences as part of the Debtor's filing.

No such air of détente exists regarding the Debtor's objection to the claim filed by the

HOA.  According to the records of the HOA, the Debtor has been habitually behind in the

payment of its annual assessments since 2001.  NBP does not dispute the date of default, but

greatly disputes the amount, if any, needed to cure.  The HOA and NBP were working towards a

resolution when the problem reached critical mass in the autumn of 2017.

On September 18, 2017, the HOA filed a Notice of Lien ("2017 Lien") that set the

amount due for each NBP lot at $57,730.36.  This amount includes assessments from 2001 to

2017 plus late charges, attorney's fees, disbursements and interest, minus certain credits.  The

2017 Lien is signed by Thomas Damiani as President of the HOA.

---

[1] Panella has filed a proof of claim in this amount.  (Claim No. 4-1).

Less than three (3) weeks later, on October 6, 2017, BPS Lot 3, LLC and BPS Lot 13, LLC ("BPS Lots") owners[2] of Bell Point Lots 2 and 13 respectively, filed a Corrective Notice of Lien ("Corrective Lien") in the amount of $128,903.67 more than doubling the amount due per lot.  The Corrective Lien is endorsed by both BPS entities with Joshua Silver as the "Authorized Signatory."[3]

Litigation ensued in New York State Supreme Court ("State Court") when actions were commenced on October 12 and 27, 2017 to foreclose certain liens and collect money judgments respectively.  Russell, via BPS Lots, filed the complaints "in the Right of" the HOA.  The center of the litigation in State Court, as well as this Court, is the effect, if any, of the SOL on the older assessments.  If it applies, the per lot charge would be drastically reduced.  An additional issue in this Court is the HOA's methodology used to calculate the liens.  Time is of the essence, as the Debtor indicates that the basis of its plan will involve the sale of certain lots which would be impractical unless and until the issue with the HOA is resolved.

### FACTS

1. The HOA is a New York not-for-profit corporation.  (Ex. A, ECF No. 45).

2. It encompasses a total of eighteen (18) lots located in Bell Point.  *Id.*

3. Debtor owns eleven (11) of the eighteen (18) parcels.  (¶ 9, ECF No. 100).

4. The rights and responsibilities of the HOA members are contained in the Amended Declaration of Protective Covenants, Conditions, Restrictions, Easements, Charges and Liens of Bell Point Shores Homeowners Association, Inc. (the "Declaration").  (Ex. A, ECF No. 45).

---

[2] The BPS Lots are owned and controlled by Joseph Russell ("Russell").

[3] It is unclear to the Court what "authority" attorney Silver is referencing.

5. Section 5.07 states in part, "The Assessments shall be paid when due.  All sums assessed . . .

but unpaid, together with late charges (not exceeding one and ½ percent per month)[4] of the

amount of the overdue Assessment or portion thereto) and fees for violations of the Rules and

Regulations and interest thereon at such rate as may be fixed by the Board of Directors from time

to time (such rate not to exceed the maximum rate of interest then permitted by law) . . . shall

constitute a lien upon the Owner's Lot . . . ." *Id.*

6. From 2001 to 2017, NBP failed to pay the total annual assessment dues to the HOA.  (Ex. D,

ECF No. 111).

7. The HOA filed liens against NBP in 2002, 2005, 2007, 2014 and twice in 2017[5] in the Warren

County Clerk's Office.  (Exs. A, B, C, D, E and G, ECF No. 100).

8. All the filed liens except the Corrective Lien, utilize the same methodology (the "Standard")

to determine the amount due.  The Standard is based upon the assessment, a one-time late charge

of 16%[6], reasonable attorney's fees and disbursements plus simple interest of 9%.[7]  *Id.*

9. The 2014 lien and the 2017 Lien utilize the Standard and credit the Debtor with one payment

and a reduction for certain services performed by the Debtor.  *Id.* at Exs. D and E.

10. The amount of the 2014 lien is $38,065.24 per lot.  *Id.* at Ex. D.

11. On November 25, 2015, NBP's attorney enclosed a letter (the "Letter") and a check (the

"2015 Check") for $5,412.00 payable to the HOA.[8]  *Id.* at Ex. M.

---

[4] The Court notes that section 5.07 of the Declaration contains what appears to be an errant parenthesis.

[5] The 2017 Lien and the Corrective Lien.

[6] The late charge for the 2001 assessment was retroactively changed from 10% to 16% in the 2014 Lien without explanation.

[7] The interest rate was lowered from 10% to 9% effective with the 2008 assessment.

[8] The HOA's State Court attorney at the time was Michael J. O'Connor, Esq.

12. According to the HOA's ledger, the 2015 Check was applied to the 2015 assessment.  *Id.*

13. The 2017 Lien is $57,730.36 per lot.  *Id.* at Ex. E.

14. The Corrective Lien includes "annual assessments, late penalties and interest to October 6, 2017 . . . bearing interest at the rate of nine percent (9%) per annum and late fees at the rate of sixteen percent (16%) per annum (compounded annually) from October 6, 2017, plus attorney's fees & costs . . . ."  *Id.* at Ex. G.

15. The amount of the Corrective Lien is $128,903.67 per lot.  *Id.*

16. The Corrective Lien does not credit the Debtor with any payments or services rendered.  *Id.*

17. The Corrective Lien indicates that the 2017 Lien "contains certain errors in its accounting" of the amount due.[9]  *Id.*

18. On October 12, 2017, BPS Lots commenced an action "in the Right of" the HOA in State Court against NBP, Northwest Bay Funding, Inc., Michael O'Brien ("O'Brien"),[10] Lake George Park Commission and the HOA to foreclose on the liens related to lots 11, 16, 17, and 18.  (Ex. D, ECF No. 111).

19. On October 27, 2017, BPS Lots commenced a second action "in the Right of" the HOA in the State Court against NBP and O'Brien for a money judgment in the amount of $902,325.76 relating to lots 3, 4, 5, 7, 9, 10 and 15.  *Id.*

20. On December 12, 2017, BPS Lots filed a lawsuit, on behalf of all HOA members, in State Court against the members of the Board of the HOA individually.  (Ex. H, ECF No. 100).

21. On December 17, 2017, the HOA ratified the actions of BPS Lots and authorized them to continue the actions on the HOA's behalf.  *Id.* at Ex. I.

---

[9] The Corrective Lien provides no explanation or analysis of the purported accounting errors.  *Id.*

[10] O'Brien is the Debtor's principal.

22. In exchange, BPS Lots released the individual members from liability and indemnified them.

*Id.*

23. The State Court found that NBP had initially met the standard for summary judgment which would have limited the HOA's recovery to assessments from 2011 – 2017 based upon the SOL. (Ex. D, ECF No. 111).

24. The State Court found that there was a question of fact[11] as to whether the parties had an open, mutual account ("OMA").  *Id*.

25. The Debtor filed this Chapter 11 petition on April 4, 2019.  (ECF No. 1).

26. On October 1, 2019, the HOA filed a proof of claim in the amount of $1,476,716.20.  (Claim No. 2-1).

27. On October 4, 2019, Panella filed a Motion for Relief from the automatic stay.[12]  (ECF No. 37).

28. On October 29, 2019, the Debtor filed an objection to the HOA's proof of claim (the "Objection").  (ECF No. 41).

29. On November 27, 2019, the HOA filed opposition (the "Opposition") to the Objection.  (ECF No. 50).

30. On December 4, 2019, NBP filed a reply to the Opposition.  (ECF No. 55).

31. On November 24, 2020, the Debtor filed a "First Motion for Summary Judgment Rejecting HOA Claim."  (ECF No. 100).

---

[11] Significantly, it appears the State Court did not have the benefit of the HOA's ledger which demonstrates that the HOA applied the 2015 Check to the 2015 assessment only.

[12] Since there appears to be significant equity in the property, the motion for relief has been continued.

32. On November 24, 2020, the HOA filed a Motion for Summary Judgment "dismissing that portion of the Debtor's objection to the HOA's claim that asserts the statute of limitations as an affirmative defense . . . ." (ECF No. 105).[13]

33. On December 9, 2020, NBP filed a response to the HOA's summary judgment motion. (ECF No. 109).

34. On December 9, 2020, the HOA filed its response to the Debtor's summary judgment motion. (ECF No. 111).

35. On December 15, 2020, the HOA filed a reply to the Debtor's response to the HOA's Motion for Summary Judgment. (ECF No. 119).

36. On December 16, 2020, the Court held a hearing on all pending matters. (ECF No. 122).

37. On January 11, 2021, the HOA filed an amended proof of claim in the amount of $1,139,070.96.[14]

## ARGUMENTS

The Debtor argues that the SOL applies to the alleged unpaid assessments rendering any that were due prior to October 12, 2011 uncollectable. NBP further posits that no OMA exists between it and the HOA. *See* NBP's Summary Judgment Motion, ECF No. 100.

---

[13] The Court takes notice that the HOA's motion is partially based upon the affidavits of Thomas Herrick, President of the HOA. Mr. Herrick's familiarity with the current dispute is apparently based upon "[r]eview of various documents and communications with board members." (Herrick Aff., ECF No. 105). The efficacy of the affidavits is suspect, as Mr. Herrick does not have direct knowledge of the facts.

[14] The amended proof of claim removes $83,901.37 in attorney's fees and replaces that amount with "plus reasonable attorney's fees" as permitted by the Declaration. Compared to the straight-forward lien calculations of earlier years, the attachment to the amended claim consists of a hodgepodge of twenty-three (23) lettered columns of numbers, dollar signs and percent symbols. Twelve (12) of the columns constitute various late fee calculations and different categories of interest on late fees. Other than the removal of the attorney's fees, it is unclear what has been adjusted. (Claim No. 5-1).

The Debtor further asserts that the HOA's claim to collect interest and late fees on unpaid assessments is unenforceable, void and violates the usury statute in New York. *Id.* Additionally, NBP argues that the portion of the HOA's claim for compound interest[15] should be disallowed as well as the recurring 18% interest and late fees. *Id.* The Debtor insists the HOA violated the Declaration and past practices when it ratified the Corrective Lien on the unpaid assessments. *Id.* According to the Debtor, the HOA's methodology utilized to calculate the Corrective Lien diverges significantly from all previous liens. The Debtor argues due to the past practices and dealings between the parties, the HOA is subject to a laches defense and is estopped from unilaterally changing how the assessments and charges are calculated. NBP also moves to strike the HOA's request for attorney's fees.[16] Finally, the Debtor requests reasonable attorney's fees. *Id.*

In response, the HOA maintains that the Debtor and the HOA have an OMA pursuant to N.Y. C.P.L.R. § 206(d)[17] and N.Y. G.O.L. § 17-101[18] and that the 2015 Check represents a partial payment and the last transaction between the parties. In addition, the HOA argues that the usury caps do not apply to defaulted obligations and that the Declaration authorizes these charges

---

[15] The HOA concedes that compound interest is in error as the Declaration does not provide for its utilization. *See* ¶ 34-35, ECF No. 111.

[16] As stated *supra*, the amended claim withdraws the problematic attorney's fees.

[17] N.Y. C.P.L.R. § 206(d) provides:
> Based on account. In an action based upon a mutual, open and current account, where there have been reciprocal demands between the parties, the time within which the action must be commenced shall be computed from the time of the last transaction in the account on either side.

N.Y. C.P.L.R. § 206.

[18] N.Y. G.O.L. § 17-101 states in relevant part:
> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules . . . .

N.Y. G.O.L. § 17-101.

and therefore equitable relief is not appropriate.  The HOA argues that the real issue is that the

Debtor has defaulted on its obligation to pay timely assessments.

**DISCUSSION**

Four (4) general issues are raised:

(1) Does the Declaration permit compound interest?

(2) Does the SOL bar consideration of charges prior to October 12, 2011?

(3) Did the HOA improperly apply late fees and interest?

(4) Are the HOA's attorney's fees reasonable?

Issues one (1) and four (4) are moot;[19] this decision focuses on issues two (2) and three (3).

**I. Standard for Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court should grant

summary judgment to the moving party if it determines that "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting F.R.C.P. 56(c))

(internal quotation marks omitted).  When reviewing a motion for summary judgment "the

inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable

to the party opposing the motion."  *In re Medical X-Ray Film Antitrust Litig.*, 946 F. Supp. 209,

216 (E.D.N.Y. 1996).  An issue of fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

---

[19] *See* Footnotes 15 and 16.

"When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, No. 9:06-CV-401, 2008 WESTLAW 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing Anderson, 477 U.S. at 250 n.4), *aff'd in part, remanded in part*, 375 F.App'x 73 (2d Cir. 2010).

If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significantly probative" evidence that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal citations and quotation marks omitted). Here, the HOA has failed to do so.

## II. The Statute of Limitations Applies to NBP's Alleged Breach of Contract

### A. Each Alleged Failure to Pay Annual Assessments is a Separate Breach of the Declaration

The HOA argues that it and the Debtor had an OMA and that the SOL has not expired as there was a partial payment in 2015. The HOA is incorrect. When dealing with assessment dues, a separate breach of contract occurs each year that the Debtor fails to pay them. *Meadowbrook Farms Homeowners Ass'n, Inc. v. JZG Res., Inc.*, 105 A.D.3d 820, 822, 963 N.Y.S.2d 300 (N.Y. App. Div. 2013) ("[A] new breach occurred for statute of limitations purposes each year the defendant failed to make an allegedly required payment to the [homeowners' association]."); *see also Forest Hills Gardens Corp. v. Kamp*, 2008 N.Y. Misc. LEXIS 10636, at *6 (N.Y. Sup. Ct. Apr. 1, 2008) ("[A]n action for the breach of a covenant in a deed is subject to a six-year statute of limitations . . . and causes of action which sound in contract or quasi contract are also subject to a six-year statute of limitations.") (collecting cases);

*Douglas Manor Ass'n v. Popovich*, 167 A.D.2d 499, 500, 562 N.Y.S.2d 170 (N.Y. App. Div.

1990) (finding that the homeowners' association conceded that recovery of certain unpaid

association dues was barred by the six-year SOL); *Sce v. Ach*, 56 A.D.3d 457, 458, 867 N.Y.S.2d

140 (N.Y. App. Div. 2008) ("[W]ith respect to a note payable in installments . . . there are

separate causes of action for each installment accrued, and the statute of limitations begins to run

on the date each installment becomes due and is defaulted . . . ."). The Court concludes that the

SOL defense is thus in play.

### B. No Open, Mutual Account Exists Between the Debtor and the HOA

To circumvent the threshold SOL issue, the HOA argues that it and the Debtor had an

OMA and that the 2015 Check was the final transaction on the account. According to the HOA,

the SOL did not start running until 2015. Based upon the following analysis, the Court

disagrees.

"An open, mutual account exists when the parties regard the items as constituting one

account and as capable of being set off one against the other so that it is only the balance that

constitutes the claim." *Rodgers v. Roulette Recs., Inc.*, 677 F. Supp. 731, 735 (S.D.N.Y. 1988)

(citation and internal quotations omitted). "For a mutual and open account to exist, there must be

a mutual relationship, that is, there must be reciprocity of dealing . . . [A]n account is generally

not considered mutual if all the items are on one side." *1 Am. Jur. 2d Accounts and Accounting §

5* (footnotes omitted). "The mere fact that parties have cross-demands against each other does

not constitute a mutual account . . . ." *Brown v. Consol. Fisheries Co.*, 165 F. Supp. 421, 423 (D.

Del. 1955).

"The general rule is that where the account is all on one side, the cause of action arises

from each item as far as the Statute of Limitations is concerned." *Bagget Transp. Co. v. United*

*States*, 319 F.2d 864, 870 (Ct. Cl. 1963).  "A finite series of debits followed by an indefinite

series of credits does not constitute a mutual, open and current account."  *Rodgers*, 677 F. Supp.

at 736.  When the HOA filed liens against NBP in 2002, 2005 and 2007, it never credited any

services performed to NBP or O'Brien.  *See* NBP's Summary Judgment Motion, Exs. A, B and

C, ECF No. 100.  The status quo was only a series of debits; that lack of balance negates any

inference of an OMA.

Nothing in the record supports the conclusion that the Debtor and the HOA agreed to a

course of dealings.  "[T]he existence of such an [open mutual] account does not necessarily

follow as a consequence of the fact that each party has an open account current against the other,

and such fact is of itself no ground for even a prima facie presumption of a mutual course of

dealing . . . ."  *Isthmian S.S. Co. v. United States*, 150 F. Supp. 191, 193 (S.D.N.Y. 1956)

(quoting from 54 C.J.S., Limitations of Actions, § 165 at 116).

To support its position of an OMA, the HOA relies on O'Brien's affidavit, submitted in

the State Court, in which he demands credits for work performed.  However, the HOA adamantly

disputes this work and states "[i]t should be noted that the HOA contends that the services listed

by Mr. O'Brien were either not provided, were exaggerated, were overvalued, or were not

authorized to be performed."  *See* HOA's Motion for Summary Judgment, ECF No. 105.

Presently, "there was no mutual agreement as to the validity of the items or as to their inclusion

in any account or any promise to pay."  *Consol. Fisheries Co.*, 165 F. Supp. at 423.  Rather than

suggesting an OMA between NBP and the HOA, the conflicting and wavering demands of NBP

and the HOA "reek[] of disagreement and not of agreement."  *Isthmian S.S. Co. v. United States*,

191 F. Supp. 335, 337 (S.D.N.Y. 1957) (finding no OMA where "each party made separate,

independent and conflicting claims with respect to separate and independent bills").

In addition, the Corrective Lien, blessed by the HOA,[20] fails to credit NBP for any services performed.[21]  *See* NBP's Motion for Summary Judgment, Ex. G, ECF No. 100.  The Corrective Lien also fails to credit NBP for the 2008 cash payment and to recognize the 2015 Check as a credit.  *See id.*  Absent any offsetting credits to NBP, the Corrective Lien does not support the existence of an OMA because "[t]he lack of offsetting debits and credits in the statutory period negates the existence of a mutual account."  *Rodgers*, 677 F. Supp. at 736.

Furthermore, the HOA's contention of an OMA is undercut by its demand for interest and late fees in its claim against NBP.  *See Minion v. Warner*, 238 N.Y. 413, 419, 144 N.E. 665, 666 (N.Y. 1924) ("The allowance of such interest is inconsistent with the conclusion that the Statute of Limitations does not apply."); *see also Van Beuren v. Van Gaasbeck*, 4 Cow. 496, 498 (N.Y. Sup. Ct. 1825) ("[T]here is no instance where interest is given on an open mutual account, without some particular circumstances.").  While not necessarily prohibited, the HOA's inclusion of interest and late fees contradicts the argument that the SOL is not applicable.  *Minion*, 238 N.Y. at 419.

### C. The 2015 Check is Not a Partial Payment on Past Due Assessments

The Court further finds the 2015 Check is not a partial payment and thus does not toll the SOL:

> And even if it be true that the defendant never made any particular direction as to how the payments should be applied, that is not sufficient to save the bar of the statute, unless the plaintiff can show that they were made by the defendant consciously to apply upon the whole account, and in recognition of the whole account.

*Crow v. Gleason*, 141 N.Y. 489, 494, 36 N.E. 497 (N.Y. 1894).

---

[20] The HOA gave unanimous written consent to Russell to file the two lawsuits, based on the Corrective Lien, against NBP.  *See* NBP's Motion for Summary Judgment, Ex. I, ECF No. 100.

[21] The HOA's argument of an OMA is seemingly at odds with its own practices because the 2017 Lien attempts to credit NBP for services, yet it was supplanted three (3) weeks later by the Corrective Lien which does not list any credits.  The HOA's own course of dealings contradicts its assertion that an OMA exists.

"Even if the payments had not been specifically indicated for a definite purpose . . . a general

payment will not stay the operation of the Statute, where it has started to run, unless with the

payment there is some evidence that the debtor intended to acknowledge and admit the greater

debt . . . ." *Consol. Fisheries Co.*, 165 F. Supp. at 424 (citing to *United States v. Wilder*, 80 U.S.

254 (1871)) (finding that the plaintiff's claims were barred by the SOL when there was no

OMA).

Here, there is no such evidence of intent and the Court will not infer one.  The Letter with

the 2015 Check states in relevant part, "Enclosed please find our trust check number 2305

payable to Little & O'Connor Attorneys, PC in the amount of $5,412.00."  *See* NBP's Motion for

Summary Judgment, Ex. M, ECF No. 100.  The Letter references a partial payment and an

agreement.  However, it does not indicate what the agreement is or how the partial payment is to

be utilized.  The HOA interpreted and applied the 2015 Check as a payment for 2015 dues only.

*Id.*  The HOA's accounting ledger plainly states "Northwest Bay Partners 4 Lot Dues 2015" in

the amount of $5,412.00.  *Id.*  Thus, the HOA's own accounting records negate its argument that

an OMA exists because the HOA applied the 2015 Check to 2015 assessment dues and not to a

greater debt.

Also, contrary to the HOA's contention, N.Y. G.O.L. § 17-101 does not apply to the

current matter.  *See Lew Morris Demolition Co. v. Board of Educ.*, 40 N.Y.2d 516, 521, 387

N.Y.S.2d 409 (N.Y. 1976) (holding that a partial payment tolls the SOL when it admits the

greater debt and includes an absolute and unqualified promise to pay the greater debt).  As

previously analyzed above, the Letter does not acknowledge previous assessment dues (i.e., the

greater debt due).  It also does not state an absolute and unqualified intention to pay them.

Moreover, "[s]tating a balance due ends the running of an open, mutual account and begins the running of the applicable statute of limitations." *Rodgers*, 677 F. Supp. at 735. Presently, each time the HOA filed liens in 2002, 2005, 2007, 2014 and 2017 against NBP, the SOL began running. Therefore, any charges before October 12, 2011 are subject to the SOL.

Finally, as a matter of public policy, the HOA's attempt to retroactively create an OMA violates the finality and fairness of the SOL defense. The HOA's ex post facto accounting creates an unfair burden on NBP since the HOA now claims that NBP is liable for its purported wrongs several years beyond the statutory six-year limit. *See Duffy v. Horton Mem'l Hosp.*, 66 N.Y.2d 473, 476-77, 488 N.E.2d 820, 823 (N.Y. 1985) ("A defendant should be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations . . . .").

## III. Equitable Relief

It has long been recognized that "bankruptcy courts are courts of equity that apply equitable principles in the administration of bankruptcy proceedings." *Forman v. Amboy Nat'l Bank (In re Price)*, 361 B.R. 68, 79 (Bankr. D. N.J. 2007) (quoting *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2006). Here, laches, equitable estoppel, and quasi-estoppel prevent the HOA from altering the Standard[22] used from January 2001 to September 18, 2017 to calculate the liens.

### A. Laches

The doctrine of laches has been explained as "an equitable defense based upon the . . . maxim *vigilantibus non dormientibus aequitas subvenit* (equity aids the vigilant, not those who sleep on their rights)." *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997)

---

[22] One-time 16% late charge, reasonable attorney's fees and disbursements plus 9% simple interest. *See* Fact 8 and Footnotes 6 and 7.

(citations omitted). Further, laches is "[e]ssentially the equitable substitute for a statute of limitations . . . ." *See In re Dini*, 566 B.R. 220, 228 (Bankr. N.D. Ill. 2017) (citation omitted).

The Second Circuit recently analyzed the doctrine of laches and held, "A party asserting a laches defense must show that the plaintiff has inexcusably slept on its rights so as to make a decree against the defendant unfair. Laches . . . requires a showing by the defendant that it has been prejudiced by the plaintiff's unreasonable delay." *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019) (citation omitted); *see also Tri-Star Pictures v. Leisure Time Prods., B.V.*, 17 F.3d 38 (2d Cir. 1994); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1039 (2d Cir. 1980). "Laches is an important consideration in bankruptcy proceedings because the chief purpose of the bankruptcy law is to secure a prompt and effectual administration and settlement of the estate . . . ." *Gazes v. DeArakie (In re DeArakie)*, 199 B.R. 821, 826 (Bankr. S.D.N.Y. 1996).

### 1. Unreasonable and Inexcusable Delay in Changing the Standard After Seventeen (17) Years

First, the Court finds it is unreasonable for the HOA to alter the Standard after seventeen (17) years. *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 255 (2d Cir. 2004) (holding a seventeen (17) month delay was significant); *Brown v. Sixteen, Inc.*, 02 Civ. 4630, 2009 U.S. Dist. LEXIS 36211, at *21 (S.D.N.Y. Apr. 28, 2009) (finding an eleven (11) year delay was unreasonable and prejudicial); *Barney v. Consol. Edison Co.*, Civil Action No. 99-CV-0823, 2007 U.S. Dist. LEXIS 22494, at *20-21 (E.D.N.Y. Mar. 28, 2007) (determining an eight (8) year delay as lengthy and inexcusable).

While a time delay alone will not determine if laches applies, the longer the duration between the ability to pursue an action and when that action is finally taken is a primary factor. *Haggar Int'l Corp. v. United Co.*, 03 CV 5789, 2008 U.S. Dist. LEXIS 140635, at *16 (E.D.N.Y.

Mar. 11, 2008) (finding that a party's nearly seven (7) year delay to enforce its rights "sufficient

to raise the presumption of laches under the case law").  "A court of equity . . . has always

refused its aid to stale demands where the party has slept upon his right, and acquiesced for a

great length of time." *McKechnie v. McKechnie*, 3 A.D. 91, 102, 39 N.Y.S. 402, 408 (N.Y. App.

Div. 1896) (quoting *Smith v. Clay*, 3 Brown Ch. 640, note).  Here, from 2001 to September 18,

2017, the HOA used the Standard to calculate liens.  Then, on October 6, 2017, the HOA

abruptly abandoned the Standard.

Further, the HOA offers an unavailing explanation that litigation costs forced it to modify

its procedure.[23]  *See* ¶ 24, ECF No. 111; *see also Simpson v. Mutual Omaha Ins. Co.*, 97 Civ.

1339, 2000 U.S. Dist. LEXIS 3814, at *21 (S.D.N.Y. Mar. 27, 2000) ("The plaintiff offers no

reasonable explanation for this considerable delay . . . .").  Thus, this delay is unjustifiable and

indefensible.

### 2. The HOA's Seventeen (17) Year Delay is Prejudicial to the Debtor

Second, the Court holds that the HOA's delay is prejudicial to the Debtor as evidenced by

the uncertainty of its legal rights, unlimited exposure to legal obligations, and financial losses.

*See In re Dini*, 566 B.R. at 231; *see also In re Caicedo*, 159 B.R. 104, 107 (Bankr. D. Conn.

1993) (finding prejudice to a creditor arising from substantial expenses needed to calculate a

historical appraisal and "confirm the balances of prior liens, in light of the lien in issue").  After

more than seventeen (17) years, the Debtor still has no certainty of its legal rights and is exposed

to protracted legal obligations.  *In re Dini*, 566 B.R. at 232.

---

[23] The HOA states that due to perceived costs, its "only enforcement tool was and is the assessment of late fees and interest on unpaid assessments." ¶ 24, ECF No. 111.  Late fees and interest had been assessed since the 2002 lien was filed.  The enhanced enforcement techniques beginning with the Corrective Lien are seemingly about more than mere assessment collection.

In addition to legal uncertainty, "pecuniary losses of many types may be considered in weighing the prejudice to a defending party in the context of laches." *Id.* at 231 (citation omitted). "[L]itigation expenses constitute prejudice within the purview of the laches defense." *Id.* (citation omitted). Here, the Debtor has incurred extensive litigation and administrative costs to contest the Corrective Lien in the State Court and proof of claim, based off the Corrective Lien, in this Court.

Undoubtedly, the Debtor is further prejudiced by the HOA's attempt to pile on excessive fees, charges, and interest in the Corrective Lien[24] and proof of claim. After using the Standard to calculate liens for more than a decade, the HOA simply cannot adopt a new methodology to calculate the liens. Additionally, "some prejudice is evident and is, indeed, almost inevitable given the length of delay." *Liman v. India Supply Mission*, 381 F. Supp. 368, 371 (S.D.N.Y. 1974).

For these reasons, the Debtor suffered material prejudice caused by the HOA's seventeen (17) year delay to deviate from the Standard. As a result of the unconscionable delay coupled with the prejudice to the Debtor, the doctrine of laches bars the HOA from changing the Standard. Thus, the HOA must use the calculation methodology implemented before the Corrective Lien.

### B. Equitable Estoppel

In a similar vein, equitable estoppel applies in this matter because the Court will not aid those who have slept on their rights. "Premised on the equitable maxim that no party should be permitted to take advantage of its own wrongs, equitable estoppel prevents a party from enforcing or asserting rights where its own conduct has induced another to justifiably and

---

[24] *See* Facts 14 and 15.

detrimentally rely upon the belief that such enforcement would not be sought." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 351 (S.D.N.Y. 2019) (citations omitted).

It has been found:

> Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result. The doctrine is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.

*Pilkington North America, Inc. v. Mitsui Sumitomo Ins. Co. of America*, 460 F. Supp. 3d 481, 497 (S.D.N.Y. 2020) (citations omitted and internal quotation marks omitted); *see also Kosakow v. New Rochelle Radiology Assocs.*, P.C., 274 F.3d 706, 724 (2d Cir. 2001).

"The elements of equitable estoppel are (1) material misrepresentation, (2) reliance, and (3) damages." *In re DeArakie*, 199 B.R. at 827 (citing *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). Here, the three elements of equitable estoppel are met. First, the HOA's failure to enforce its rights per the Declaration until October 6, 2017 equates to a material misrepresentation. *See In re Nunnery*, 2011 Bankr. LEXIS 3888, Case No. 11-80267, at *11 (Bankr. M.D.N.C. Aug. 17, 2011) (applying equitable estoppel against a creditor when it had the right to foreclose on a property yet did not exercise such right). The HOA stayed silent and thus made a material misrepresentation to the Debtor. *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) ("Silence may in some cases be sufficient to establish a misrepresentation.").

Second, NBP reasonably relied on the HOA's conduct and behavior for seventeen (17) years. During that period, each lien filed against NBP was based only on the assessment, a one-time late charge, reasonable attorney's fees, disbursements, and simple interest.[25] Given this amount of time and the number of liens filed, the Debtor reasonably relied that any and all future

---

[25] *See* Fact 8 and Footnotes 6 and 7.

lines would conform to past practices and procedures.  Finally, the Debtor's plan of

reorganization employs the Standard.  The Court finds it would be not be fair or just to allow the

HOA to diverge from its previous methodology and weaponize its procedures resulting in a

claim against the Debtor of more than $1,400,000.00 based upon actual assessments totaling only

$27,181.35[26] per lot.

Third, as analyzed *supra*, the Debtor has incurred damages by relying on the HOA's

silence.  Therefore, the HOA is equitably estopped from unilaterally changing the procedure to

determine the amount of the liens and/or claims.

## C. Quasi-Estoppel[27]

"Quasi-estoppel is essentially the same [as equitable estoppel] but it does not require a

showing of reliance and instead is applied by the court to prevent an unjust or unconscionable

result."  *KCI Rest. Mgmt. LLC v. Omaha Seldins (In re SVP Fin. Servs. Partners LLLP)*, No.

CV-20-01502-PHX-SPL; No. CV-20-01503-PHX-SPL, 2021 U.S. Dist. LEXIS 25183, at *18-19

(D. Ariz. Feb. 9, 2021) (quoting *Birtciel v. XL Specialty Ins.*, No. 2:13-CV-02511 JWS, 2015

U.S. Dist. LEXIS 15219, at *5-6 (D. Ariz. Feb. 9, 2015).  Quasi-estoppel "precludes a party from

asserting, to another's prejudice, a position that is inconsistent with a previously-held position."

*In re Price*, 361 B.R. at 79.

---

[26] This amount is derived from adding the actual assessments from 2001 to 2019 as stated in Claim No. 2-1.

[27] Although the Debtor did not plead quasi-estoppel, the Court does not find any unfair surprise or prejudice to the
HOA.  *Noa, LLC v. El Khoury*, No. 5:114-CV114-Fl, 2017 U.S. Dist. LEXIS 233013, at *19 (E.D.N.C. Sept. 5,
2017) ("Although "equitable estoppel" is distinct from quasi-estoppel . . . defendants' failure to plead quasi-estoppel
does not warrant finding of waiver where plaintiff has not suffered unfair surprise or prejudice.").  Further, "[w]here
issues raised by defendants' defense of estoppel arise from information contained in documents entirely within
plaintiffs' possession and control . . . plaintiffs now have the same access to relevant materials they would have had
if defendants pleaded quasi-estoppel or estoppel generally . . . ."  *Id.* at *19-20.  Here, the Creditor has control and
access to all relevant documents and information, specifically the liens filed against the Debtor.

Here, the specific facts and circumstances warrant the application of quasi-estoppel because the Court must address the inequities raised by the HOA's inconsistent methodology to calculate the liens.  The Creditor used the Standard for seventeen (17) years up to September 18, 2017.  Then, on October 6, 2017, the HOA abandoned the Standard and exponentially amplified the amount due.  Because the procedure used for the Corrective Lien deviates so disproportionally from the Standard, it would be unconscionable for the Court to allow the HOA to innovate a new lien methodology after using the Standard for more than seventeen (17) years.  Further, the 2017 Lien, filed merely three (3) weeks prior to the Corrective Lien, confirms that even the HOA concluded that the fees, charges, and interest amounts are substantially less than the ones contained in the Corrective Lien.

## CONCLUSION

The record is devoid of any genuine issue of material fact and the evidence, when viewed in the light most favorable to the HOA, supports the granting of NBP's request.  For all the foregoing reasons, the SOL bars any charges prior to October 12, 2011 and the equitable remedies dictate that the HOA use the Standard for its proof of claim.  Therefore, the Court grants partial summary judgment to NBP and sustains its objection to the proof of claim with respect to the SOL and the calculation methodology.

Given this determination, the Court need not address the parties' arguments on usury caps and unconscionable penalties.

Additionally, the Court denies the Debtor's request for attorney's fees with respect to the current motions.  Finally, the Court denies the HOA's request to dismiss the Debtor's SOL defense and NBP's request to strike the claim in toto.

The Court finds no prejudice in the Debtor paying any charges not barred by the SOL or the forbidden procedures.  The HOA is directed to file a second amended proof of claim for any charges incurred after October 12, 2011.  The new claim must apply the Standard utilized by the HOA prior to the Corrective Lien and be filed no later than **May 11, 2021**.

The Debtor will then have until **May 25, 2021** to bring any supplemental objection.

SO ORDERED.

Dated:  April 27, 2021                                            /s/ Robert E. Littlefield, Jr.
            Albany, New York                              Robert E. Littlefield, Jr.
                                                                         United States Bankruptcy Judge